## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JOHN D. MUIR,**

    **Plaintiff,**

**v.**

**BAPTIST PULMONARY SPECIALISTS, INC., and BAPTIST HEALTH SYSTEMS, INC.,**

    **Defendants,**

**CASE NO.**

*Plaintiff Demands a Trial by Jury*

_____

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, John D. Muir (hereinafter referred to as "**Plaintif**" and/or "**Muir**"), by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Baptist Pulmonary Specialists, Inc., and Defendant Baptist Health Systems, Inc. (hereinafter referred to as "**Defendants**" and/or "**Baptist**"), and alleges as follows:

## INTRODUCTION

1.    This employment discrimination case is about an employer who subjected its elderly disabled employee to relentless harassment, discrimination and retaliation to force the employee's resignation in favor of employing younger and, what they incorrectly believed to be, more able-bodied employees.

2.     Plaintiff John D. Muir brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. as amended ("**ADAAA**") and the Age Discrimination in Employment Act 29 U.S.C. §621 et seq. ("**ADEA**").

3.     Dr. Muir seeks monetary relief to redress Defendants' unlawful employment practices in violation of both the ADAAA and the ADEA. Additionally, this action seeks to redress Defendants' deprivation of Dr. Muir's personal dignity and his civil right to pursue equal employment opportunities.

4.     After more than a decade of exemplary employment in a workplace otherwise largely free of discrimination, Dr. Muir found himself at the center of a hostile work environment as part of a scheme orchestrated by the Defendants to force Dr. Muir to resign under the guise of a lawful termination.

5.     Defendants' false and misconceived notations of Dr. Muir's physical capabilities and faculties wholly guided their unlawful decision and treatment of Dr. Muir.

6.     Defendants' unrelenting discrimination against Plaintiff culminated with his unlawful termination.  Defendants' offer of separation "without cause" was no more than poorly veiled ruse to hide their otherwise ill intent and to cover for months of unlawful treatment.

7.     At bottom, Defendants are liable for subjecting Dr. Muir to a work environment infested with relentless disability and age discrimination and for wrongfully terminating Plaintiff because of his disability and age.

## PARTIES

8.     At all material times, Plaintiff John D. Muir (hereinafter referred to as "Plaintiff" or "Muir") is a disabled, seventy-three (73) year-old male. Dr. Muir had received and maintained dual Board Certifications in both Internal Medicine and Pulmonary Disease, and is duly licensed to practice in medicine in the State of Florida.

9.     Plaintiff Muir was and still is an individual man residing in Nassau County, Florida.

10.     At all material times, Defendant Baptist Pulmonary Specialists, Inc. was and still is a Florida for-profit corporation duly existing by the virtue and laws of the State of Florida with offices in Duval County, Florida.

11.     At all material times, Defendant Baptist Health Systems, Inc. was and still is a Florida for-profit corporation duly existing by the virtue and laws of the State of Florida with offices in Duval County, Florida.

12.     At all material times, Defendant Baptist Pulmonary Specialists, Inc., and Defendant Baptist Healthy Systems, Inc. (hereinafter referred to as "**Defendants**" and/or "**Baptist**") were Dr. Muir's joint and/or sole employer.

13.     Defendants Baptist operate their principal place of business at 800 Prudential Drive, Jacksonville, Florida 32207, within Duval County.

14.     At all relevant times, Defendants have been continuously doing business in the State of Florida and the City of Jacksonville and have continuously held at least 20 employees throughout all relevant calendar years. 42 U.S.C. § 12111(5)(A).

15.     At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) of the ADA, 42 U.S.C. § 12115(5) and Section 107(7) of the ADA, 42 U.S.C. § 12117.

16.     Defendants are and have been a covered entity under Section 102(2) of the ADA, 42 U.S.C. § 12111(2).

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(A), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1).

18.     Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida,

Jacksonville Division.   Defendants were located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Fernandina Beach, Florida, located in Nassau County, Florida.

## ADMINISTRATIVE PREREQUISITES

19.     Plaintiff Muir has complied with all statutory prerequisites to file this action.

20.     On or about April 1, 2020, Plaintiff dual-filed his charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") against Defendants alleging the facts as set forth herein.

21.     In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

22.     On or about February 8, 2021, the EEOC issued Plaintiff a Right to Sue Letter.

23.     This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

24.    This action is being commenced more than (180) days since the inception of Plaintiff's administrative action against the Defendants.

## STATEMENT OF MATERIAL FACTS

25.    On or around July 1, 2009, Plaintiff first began his employment, having been hired at the time by the Defendants as a Pulmonologist with his office then located in Fernandina Beach, Florida, in Nassau County.

26.    As was always his self-imposed and otherwise expected standard of practice, Plaintiff worked to achieve continued excellence and success with his patients, at all times working slowly and methodically to provide individualized focus to each patient. In doing as much, Defendants and Dr. Muir's patients alike continued to provide Plaintiff with high quality work reviews and performance appraisals throughout the course of his employment with Defendants.

27.    Subsequently and as a direct result, Plaintiff and Defendants agreed to amend their original Employment Agreement on July 1, 2012 and again on June 30, 2015.

28.    In or around 2013, Defendants Baptist unilaterally made the decision to provide Dr. Muir with a Medical Scribe, Annette Lussier (hereinafter "Lussier"). While the idea of such a second set of hands seemed ideal to Plaintiff at the outset, it quickly became evident that Ms. Lussier was inadequately and improperly trained.

29.     Furthermore, Ms. Lussier was unreliable and routinely left the office early and/or without providing adequate notice to Dr. Muir.

30.     As a direct result of Ms. Lussier's deficiencies, Dr. Muir's office became increasingly behind in note taking and patient file management.

31.     In or around 2015, as what reasonably was an alarming surprise, Dr. Muir was diagnosed with Parkinson's Disease.

32.     Parkinson's Disease is a commonly known and recognized disability which impacts the patient's Nervous Systems. The illness causes a progressive onset and impacts the motor function system of the patient's body, including through tremors, stiffness, and even slowing of movement over time.

33.     Dr. Muir's symptoms included neck pain, lethargy and weight loss but in no way impacted his otherwise impeccable cognitive abilities, and in no way impacted his ability to do what mattered most to him: treat patients.

34.     Dr. Muir's symptoms further include dyskinesia which presents as a twitch or tremor in his jaw.

35.     Having consulted with his practitioners, Plaintiff began a regimen of medications and treatments which ultimately and dramatically slowed the progression of his illness, allowing him to otherwise continue with his life unaltered.

36.     Plaintiff received continued and routine care relating to his diagnosis from Dr. Irene Andonia Malaty (hereinafter "Dr. Malaty") through the University of Florida Health Neurology.

37.     Despite his diagnosis, Dr. Muir continued to perform at a high level.

38.     As a result, in or around July 2018, the parties began to discuss the terms of a third amendment to Dr. Muir's underlying Employment Agreement, the term of which would continue through June 30, 2020. As a result of the third amended agreement, the parties mutually agreed Dr. Muir would decrease his case load, opting for Dr. Muir to no longer accept Critical Care patients, nor would he be obligated to on-call for Critical Care.

39.     At all times, Plaintiff expressed his desires to work until he was no longer physically capable at which time he would retire. Plaintiff was beyond content with his employment at the time and, both he and his physicians fully expected would be well past the term of the third amended agreement.

40.     In or around 2019, Ms. Lussier contacted Dr. Muir's wife to advise she noticed his mouth tremor. Despite insistent pressing regarding what she perceived to be Dr. Muir's disability, Mrs. Muir neither confirmed nor denied her impressions, simply stating, "He is fine. Thank you."

41.     On or around March 12, 2019, after years of gradual build up, Plaintiff contacted Defendants' Director of Physician Integration, Catherine Holloway

(hereinafter "Holloway") and Defendants' President of Physician Integration, Matt Zuino (hereinafter "Zuino") in an effort to address his concerns relating to Ms. Lussier.

42.    Of notable concerns, Plaintiff brought to light the disparity of support provided to his younger colleague Dr. Kathia Ortiz (hereinafter "Ortiz"). Plaintiff questioned Holloway and Zuino as to why Dr. Ortiz, who had only just joined his practice in 2018 and was at least twenty-year his junior, had received a highly skilled and trained medical assistant.

43.    At no point did Defendants take appropriate correction or ameliorative action to address the woeful and potentially damaging deficiencies of Ms. Lussier. Rather, In the Summer of 2019, Defendants instead illogically took issue with Plaintiff Office Manager, Kimberly Willis.

44.    Unbeknownst to Plaintiff and without being provided any opportunity for consolation, Defendants' replaced Ms. Willis in September of 2019 with Ms. Joyce Parris, while Plaintiff was on vacation. Upon his return, it was evident that this change in staff only further heightened Ms. Lussier's inadequacies to further detriment of all in the department, particularly Dr. Muir. As a result of this inadequate action, no improvement occurred, and the office was further harmed.

45.    Rather than address Dr. Muir's legitimate and well-founded concerns regarding disproportionate treatment based on his age, Defendants began to lash out

at Plaintiff in what can only be understood as further discriminatory and retaliatory acts.

46.     Nonetheless, Dr. Muir continued to show up to work and practice high-quality medicine as was expected of him, all while surrounded by mass confusion, new staff members without obvious job descriptions and the same unqualified medical assistant.

47.     In or around early fall 2019, Plaintiff met with Dr. Malaty regarding his underlying Parkinson's treatment, in an effort to continue his routine evaluations. At the time of his appointment and in accordance with all proper medical techniques, Dr. Malaty evaluated Dr. Muir's progression utilizing the Unified Parkinson's Disease Motor Rating Scale, for which he scored "Low" or mild symptoms. Dr. Malatay further evaluated Dr. Muir as within the "Normal Range" according the Folstein Mini-Mental State Exam.

48.     On or around September 20, 2019, Dr. Muir left his office early as he had no additional patients listed on his schedule. Plaintiff expressly confirmed as much with Ms. Lussier prior to his departure. As he arrived home from work, he was contacted by Defendants and advised that two additional patients were in fact waiting to meet with him. Shocked by the unscheduled patient assignments, Plaintiff immediately offered to return to work to meet with both patients. While in the car on his return to the office, Defendants seemingly took pleasure in tormenting and

humiliating Dr. Muir, instead advising him to simply stay home and instead assigning the patients to Dr. Ortiz.

49.     Nonetheless, Plaintiff continued and return to the office, purely to ensure timely evaluation of the patients. Within thirty minutes, Dr. Muir had returned to the office only to see that both patients had in fact been evaluated.

50.     On or around September 23, 2019, Plaintiff met with Holloway, and Defendants' Human Resources/Physician Advisor, Christopher Jones (hereinafter "Jones) to discuss Defendants' decision to place Dr. Muir on a "Leave of Absence."

51.     In the days and weeks that followed, Defendants' actions made clear their true intent was to in fact terminate Dr. Muir in violation of the parties' existing contract, evidenced by the path of burned bridges and reputation attacks by Defendants.

52.     Immediately following the meeting, Holloway emailed Dr. Muir to confirm in writing the decision relayed during the morning meeting. Dr. Muir was to be placed on a medical leave and would not be allowed to return to work unless and until he provided a "fitness-to-practice" letter from his physician. Defendants, by and through their agents, made unfounded and baseless assessments of Dr. Muir's physical capacity to work and instead unilaterally deemed him as having "neurological impairments" which they felt warranted review.

53.     Defendants further advised that upon receipt, the letter from Dr. Muir's physician would be submitted to Defendants' Chief Medical Officer, Dr. Keith Stein (hereinafter "Stein"), and will only then "serve as clearance for you to return to work."

54.     It should be noted that Dr. Muir *never* requested FMLA in any form but was instead forced to take such against his will. Defendants' actions were a clear effort to remove Dr. Muir and set up a series of catastrophic events to otherwise ruin his reputation, credibility and ability to gain subsequent employment.

55.     Defendants unilaterally placed Dr. Muir on indefinite medical leave through January 31, 2020.

56.     Plaintiff immediately contacted Dr. Malaty to advise of the steps taken by Defendants and to request she prepared a "Fitness-to-Practice" evaluation.

57.     Having just seen Plaintiff a mere few weeks early and having full knowledge of Plaintiff's mental and physical capacity, Dr. Malaty did just that and quickly cleared Plaintiff to continue practicing medicine as she believed he showed no signs of detrimental neurological impairment.

58.     In response to the professional evaluation, Defendants disregarded Dr. Malaty's clearance and insisted he receive a further evaluation, this time demanding a full re-evaluation in person.

59.    Assured he would be cleared and permitted to return to work, Plaintiff did just that and agains immediately contacted Dr. Malaty. Dr. Malaty graciously obliged Plaintiff, met with him at her office, completed a full neurological workup and again drew the same conclusion: Plaintiff was fully fit and capable of working. Plaintiff provided this workup to Defendants on or around October 20, 2019.

60.    On or around November 12, 2019 and having been advised of Dr. Muir's efforts to seek Counsel, Defendants yet again rejected the completed clinical evaluation, insisting on addressing trivial and baseless complaints lobbed at Plaintiff Muir. By means of example and not meant to be an exhaustive list, Dr. Muir was falsely accused of failing to wear a sport/suit jacket and tie on one occasion while in the office, a complaint which seemed to have zero bearing or logical nexus to the underlying alleged fitness for duty. Furthermore, Defendants accused Dr. Muir of acting in an "unfriendly" manner with his staff.

61.    Defendants' efforts were nothing more than a thinly veiled effort to ruin Dr. Muir's reputation and a fishing expedition to secure their desired but unsupported outcome: proof of Dr. Muir being unfit to practice.

62.    Despite the trivial and inconsequential nature of these accusations, Plaintiff again obliged and incurred further cost to meet with Dr. Malaty who yet again addressed the concerns and cleared Plaintiff for work.

63.    Despite surpassing every hurdle thrown in his direction by the Defendants, Plaintiff prevailed and insisted on being permitted the opportunity to simply return to treating his patients.

64.    Upon information and belief, in January 2020, Defendants unlawfully and in retaliation for the ongoing complaints began to interfere with Plaintiff's medical license renewal, including but not limited withholding Plaintiff's mail from the Medical Board as well as contacting the Medical Board directly regarding his medical status.

65.    In or around February 11, 2020, Defendants wrongfully and unlawfully terminated Plaintiff because of his age and disability, and in retaliation for his objections to Defendants' unlawful discriminatory practices.

66.    At all relevant times, Plaintiff was and continued to be qualified for the position he held and for the various positions he maintained with Defendants.

67.    The aforementioned allegations are just some of the examples of the discrimination and retaliation Dr. Muir suffered at the hands of the Defendants and are not an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendants.

68.    Plaintiff believes he has been discriminated and retaliated against in violation of the ADAAA and ADEA.

69.     Additionally, Dr. Muir further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of unlawful discriminatory conduct.

70.     As a result of the acts and conduct complained of, Dr. Muir has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.   Dr. Muir also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71.     Dr. Muir suffers from increased stress and anxiety.  Similarly, Dr. Muir has trouble sleeping as a result of Defendants' unlawful conduct.  Dr. Muir is unsure of how he will work now given his age and marred reputation.  Dr. Muir is nervous that he will be unable to find work again.  However, Dr. Muir is determined to find work and to pursue employment in a workplace that treats disabled and elderly individuals with respect and dignity.

72.     Further, as a result of Defendants' unlawful employment practices, Dr. Muir felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.  As a directly result of the Defendants' frivolous and discriminatory conduct, Dr. Muir suffers from severe anxiety, difficulty with sleep, and gastrointestinal issues.

73.    Since the inception of Defendants targeted attack, Dr. Muir has required emergent treatment related to stress induced ailments, which on one such occasion required he be admitted to the hospital for further evaluation.

74.    As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Dr. Muir seeks punitive damages, jointly and/or severally against Defendants.  Dr. Muir has presented factual allegations that would permit any reasonable jury to award damages.

75.    At bottom, Defendants are liable for their reckless disregard for Dr. Muir's personal dignity and his civil right to pursue equal employment opportunity.

76.    Dr. Muir has suffered damages as a result of Defendants' unlawful employment practices.

### COUNT ONE
*Cause of Action for Discrimination Under the ADEA*

77.    Plaintiff reincorporates the allegations in the previous paragraphs.

78.    This is an action to recover all damages, interest, equitable relief and attorney's fees and costs on behalf of Plaintiff as a result of the Defendant's actions in violation of his federal rights pursuant to the Age Discrimination in Employment Act ("ADEA"), to include the remedies in 29 U.S.C. §621 et seq.

79.    Defendants Baptist are expressly prohibited under the ADEA from discriminating against Plaintiff because of his age with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

80.    The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (a) provides in pertinent part that: It shall be unlawful for an employer– (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

81.    Plaintiff is seventy-three (73) years-old and is protected against discrimination under the ADEA.

82.    At all times relevant, Defendants, by and through its employees, intended to unlawfully discriminate against Dr. Muir in the terms and conditions of his employment because of his age, and Defendant did unlawfully discriminate against Dr. Muir in the terms and privileges of his employment because of age in violation of the ADEA.

83.    The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of the ADEA.  In subjecting Plaintiff to adverse employment action on the basis of his age, Defendants intentionally discriminated against Plaintiff Muir with respect to the compensation, terms, conditions, or privileges of his employment.

84.    Dr. Muir was subject to unwelcome discriminatory conduct during the latter term of his employment with Baptist and this conduct was directed to and perpetuated upon Plaintiff because of his age.

85.   As a result of his age, Defendants Baptist subjected and permitted its employees to expose Plaintiff to discrimination and unlawful discharge.

86.   Baptist was notified about and was otherwise aware of the discriminatory conduct and policies directed at Dr. Muir by Defendants' employees/management and failed to take appropriate corrective action.

87.   Defendants violated the ADEA by unlawfully discharging and discriminating against Plaintiff based his age, of which the Defendant was fully aware.

88.   As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the ADEA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

89.   Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

90.    Defendants Baptist actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADEA, warranting the imposition of punitive damages in addition to compensatory damages.

91.    Conduct of Defendants Baptist and/or its agents deprived Plaintiff of his statutory rights guaranteed under the ADEA.

92.    As a direct and proximate result of the unlawful discrimination facilitated by Defendants, Plaintiff has suffered damages.

93.    Defendants are liable for unlawful disability discrimination under the ADEA.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the ADEA.

## COUNT TWO
### *Cause of Action for Discrimination Under the ADAAA*
### *(Disparate Treatment)*

94.    Plaintiff reincorporates the allegations in the previous paragraphs.

95.     Title I of the ADA provides that employers shall not discriminate against qualified individuals on the basis of a disability. 42 U.S.C. § 12112(a).[1]

96.     Plaintiff is a disabled individual under the law because he has a record of, and actually has, a disability diagnosis of Parkinson's Disease.  This disability affects multiple major life functions and major bodily functions including but not limited to performing manual tasks, lifting and manipulating objects, standing, sitting, bending, and overall function of his nervous system.

97.     Plaintiff was otherwise qualified to perform the essential functions of his job with reasonable accommodation. In fact, Plaintiff was cleared to return to duty on multiple occasions by his highly trained and specialized treating physician.

98.     After subjecting Plaintiff to months of an unrelenting targeted discriminatory practices, Defendants orchestrated a scheme to terminate Plaintiff under the guise of legitimate circumstances.

99.     Defendants knowingly and intentionally discriminated against Plaintiff by terminating his employment on the basis of his disability.

100.    Defendants, in the alternative, intentionally discriminated against Plaintiff by constructively discharging Plaintiff because of his disability. Defendants

---

[1] The ADA defines a disability as a "physical or mental impairment" that "substantially limits" one or more "major life activities."  29 C.F.R. § 1630.2(g)(1).

made conditions so unbearable and intolerable that Plaintiff was left with no alternative but to resign from his employment.

101.   Accordingly, Plaintiff's unlawful termination occurred under circumstances giving rise to an inference of discrimination.

102.   As a result of Defendants unlawful and discriminatory conduct against Plaintiff in violation of 42 U.S.C. section 12112(a), Plaintiff has suffered damages.

103.   As a direct and proximate result of Defendants intentional discriminatory conduct in violation of the ADAAA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

104.   Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

105.   Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADAAA, warranting the imposition of punitive damages in addition to compensatory damages.

106.   The conduct of Defendants Baptist and/or its agents deprived Plaintiff of his statutory rights guaranteed under the ADAAA.

107.   As a direct and proximate result of the unlawful discrimination facilitated by Defendants, Plaintiff has suffered damages.

108.   Defendants are liable for unlawful disability discrimination under the ADAAA.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the ADAAA.

## COUNT THREE
### Cause of Action for Discrimination Under the ADAAA
### (Hostile Work Environment)

109.   Plaintiff reincorporates the allegations in the previous paragraphs.

110.   Courts recognize disability-based hostile work environment claims under the ADA.  *See, e.g.*, *Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-T-33TGW, *1, *3, 2020 WL 2735201 (M.D. Fla. May 26, 2020) ("the Court will assume that a disability-based hostile work environment claim is actionable

under the ADA."); *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1366 (S.D. Fla. 1999) (same).

111.   Plaintiff was subjected to unwelcome harassment based on his actual and/or perceived disability.   Defendants, by and through its representatives, berated, humiliated, and demeaned Plaintiff on a regular basis because of his disability. Defendants, by and through its representatives, would call Plaintiff of a near daily basis to interrogate him regarding his disability and health status, as well as make invasive and unjustified repeated requests for additional medical records despite having sufficient records to support Plaintiff's return to work.

112.   Plaintiff complained to Defendants regarding the discriminatory animus to no avail.

113.   This conduct was undoubtedly sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.   Accordingly, Defendants subjected Plaintiff to a hostile work environment because of his disability.

114.   As a direct and proximate cause of the discrimination facilitated by Defendants, Plaintiff has suffered damages.

115.   Defendants are liable for unlawful disability discrimination under the ADAAA.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic

damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the ADAAA.

## COUNT FOUR
### *Retaliation in Violation of the ADA 42 U.S.C. § 12203(a)*

116.   Plaintiff reincorporates the allegations in the previous paragraphs.

117.   The ADA prohibits employment discrimination against an individual for opposing or complaining about unlawful disability discrimination. 42 U.S.C. § 12203(a).

118.   Plaintiff opposed Defendants' discriminatory treatment by reporting the unlawful conduct to Defendants directly and again through counsel.

119.   Following Plaintiff's opposition to the discriminatory harassment and actions against Plaintiff,  the discrimination and hostility increased dramatically. Defendants began to impose unrealistic and unjustified medical restriction upon Plaintiff, demanding unreasonable medical records for clearance to work and making baseless claims related to his performance purely in an effort to support their witch hunt.

120.   Ultimately, Defendants' unlawfully terminated Plaintiff in retaliation for his complaints of discrimination.

121.   Defendants are strictly and/or vicariously liable for retaliating against Plaintiff for complaining about unlawful disability discrimination.

122.   As a result of Defendants' unlawful employment practices in violation of the ADA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the ADA.

## COUNT FIVE
### *Retaliation in Violation of the ADEA 29 U.S.C. §621 et seq*

123.   Plaintiff reincorporates the allegations in the previous paragraphs.

124.   The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (d) provides in pertinent part that: It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor

organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

125. Plaintiff opposed Defendants' discriminatory treatment by reporting the unlawful conduct to Defendants directly and again through counsel.

126. Following Plaintiff's opposition to the discriminatory harassment and actions against Plaintiff,  the discrimination and hostility increased dramatically. Defendants began to impose unrealistic and unjustified medical restriction upon Plaintiff, demanding unreasonable medical records for clearance to work and making baseless claims related to his performance purely in an effort to support their witch hunt.

127. Ultimately, Defendants' unlawfully terminated Plaintiff in retaliation for his complaints of discrimination.

128. Defendants are strictly and/or vicariously liable for retaliating against Plaintiff for complaining about unlawful disability discrimination.

129. As a result of Defendants' unlawful employment practices in violation of the AEDA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the AEDA.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of both the ADEA and ADAAA.

Dated:  Miami, Florida  
       May 2, 2021

**DEREK SMITH LAW GROUP, PLLC**

Caroline H. Miller, Esq.  
701 Brickell Ave, Suite 1310  
Miami, FL 33131  
Tel: (305) 946-1884  
Fax: (305) 503-6741  
Caroline@dereksmithlaw.com

*Counsel for Plaintiff*